# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *IN RE* SUBPOENAS TO TRANSO USA, INC., MARIE REBOUL AND JEAN BAILLET | MISC. CASE NO. _____ |
| *Transo USA, Inc.*<br>*3000 Connecticut Ave. N.W.*<br>*Suite 300*<br>*Washington, D.C. 20008* | |
| **Non-Party Movants.** | |
| KENNY LEWIS,<br><br>      **Plaintiff,**<br><br>   vs.<br><br>SCEA DOMAINE DES BAUMARD, et al.,<br><br>      **Defendants.**<br><br>AND RELATED CROSS-CLAIM | (Case No. 3:14-cv-00471-TEH pending in the Northern District of California, San Francisco Division) |

## MOTION OF NON-PARTIES TRANSO USA, INC., MARIE REBOUL AND JEAN BAILLET TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER

TRANSO USA, INC., MARIE REBOUL AND JEAN BAILLET (collectively,

"movants" or "deponents"), pursuant to Federal Rules of Civil Procedure 45(d)(1), (3) and 26(c),

will and hereby do move this Court to quash subpoenas and for a protective order relating to

subpoenas issued from the United States District Court for the Northern District of California

and purportedly served upon movants by Vintus LLC in the case entitled *Kenny Lewis v. SCEA

Domaine Des Baumard, et al.*, Case No. 3:14-CV-00471, pending in the Northern District of

California.  The depositions are scheduled to take place on June 13, 14 and 15, 2016.  Deponents

also seek, pursuant to Federal Rules of Civil Procedure 37(a)(5) and 45(d)(1), payment of

expenses, including attorney's fees, for having to bring this motion, which was necessitated by

frivolous, burdensome and oppressive subpoenas issued by Vintus LLC, which subpoenas were

without any legal or factual basis.  This motion is based upon the memorandum of points and

authorities filed herewith, the pleadings and records filed herein, the Declarations of Christopher

Dougherty and Pamela L. Schultz, and upon such oral or documentary evidence as allowed by

the Court to be considered at the hearing on this motion.  The parties commenced the meet and

confer process on May 14, 2016, held a meet and confer by telephone on May 18, 2016, and

exchanged multiple emails following that telephonic conference, as required by Local Rule 7(m),

but could not resolve their differences.


DATED:     June 7, 2016                        Respectfully submitted,

                                               HINSHAW & CULBERTSON LLP

                                        By:    _____
                                               Christopher M. Dougherty
                                               D.C. Bar No. 978176
                                               333 South Seventh Street
                                               Minneapolis, MN 55402
                                               Telephone: (612) 333-3434
                                               Email: cdougherty@hinshawlaw.com

                                               *Attorneys for Transo USA, Inc., Marie Reboul
                                               and Jean Baillet*


2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *IN RE* SUBPOENAS TO TRANSO USA, INC., MARIE REBOUL AND JEAN BAILLET | MISC. CASE NO. _____ |
| *Transo USA, Inc.*<br>*3000 Connecticut Ave. N.W.*<br>*Suite 300*<br>*Washington, D.C. 20008* | |
| **Non-Party Movants.** | |
| KENNY LEWIS, | |
| **Plaintiff,** | (Case No. 3:14-cv-00471-TEH pending in the Northern District of California, San Francisco Division) |
| **vs.** | |
| SCEA DOMAINE DES BAUMARD, et al., | |
| **Defendants.** | |
| AND RELATED CROSS-CLAIM | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF
NON-PARTIES TRANSO USA, INC., MARIE REBOUL AND JEAN BAILLET TO
QUASH SUBPOENA AND FOR A PROTECTIVE ORDER

## I.    INTRODUCTION

This is a straightforward motion requesting that oppressive, burdensome, unwarranted and duplicative subpoenas be quashed and a protective order issued.  Vintus LLC ("Vintus") seeks to depose Washington, D.C.-based corporate entity Transo USA, Inc. ("Transo"), pursuant to Federal Rule of Civil Procedure 30(b)(6),[1] on topics which have already been discussed at length during previous depositions of other Transo employees.  Vintus also seeks to depose two individuals affiliated with Transo to largely rehash questions already asked in previous depositions of Transo representatives.  The individuals Vintus wishes to depose do not possess

---

[1] All references to a specific rule within the Federal Rules of Civil Procedure will be referred to herein as "Rule".

3507994v1 0978379

any additional information relating to a shipment which occurred almost five years ago. Although this has been raised to Vintus on many occasions relating to the depositions at issue, Vintus' counsel blatantly ignores this fact, and its counsel appears to have not even bothered to read the prior depositions to ascertain whether further depositions would be appropriate.

Moreover, Vintus astonishingly seeks to conduct jurisdictional discovery and delve into corporate and proprietary secrets of Transo in direct violation of an order from the federal court in the underlying action. Vintus' transparent end-run around a prior court order is unreasonable and oppressive on its face, and its efforts to seek jurisdictional discovery not only without a court order, but in violation of a court order, are unprecedented and completely without any legal basis.

The motion to quash should be granted and a protective order granted, awarding sanctions related to bringing this motion against Vintus for costs and expenses which were necessitated by Vintus' failure to abide by the Federal Rules of Civil Procedure. Movants have tried to resolve this matter for over three weeks, without success. Accordingly, movants have no choice but to seek the assistance of this Court.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Pleadings in Underlying Lawsuit in California

Although the instant motion has been filed before this Court because the deponents are located and/or were purportedly served here, the underlying case is pending in the United States District Court for the Northern District of California (the "Northern District of California") and entitled *Kenny Lewis v. SCEA Domaine Des Baumard, et al.*, Case No. 3:14-CV-00471 (the

3507994v1 0978379

"underlying action"). Declaration of Pamela Schultz ("Schultz Decl."), ¶ 2, Ex. A.[2] It involves a lawsuit filed by Plaintiff Kenny Lewis ("plaintiff") relating to personal injuries he allegedly sustained in California while driving a truck carrying a container of wine in October 2011 (almost five years ago). The container was loaded in France. *Id.*, at Ex. A, ¶ 13.

The lawsuit was originally filed in the Superior Court for the State of California, County of Napa (the "California state court") against Vintus and SCEA Domaine Des Baumard ("Baumard") in January 2013. *Id.* at ¶ 3. Plaintiff then added as a defendant Balguerie, a freight forwarder based in France.[3] *Id.* at ¶ 4. Balguerie filed a motion to dismiss on the basis that the California did not have personal jurisdiction over it. *Id.* at Ex. B. The California state court explicitly held that "Balguerie maintained insufficient contacts in [California] for the court to have general jurisdiction over it. Further, there is no specific jurisdiction as Balguerie performed no activities that allegedly caused plaintiff's injury." *Id.* Plaintiff then added defendant SARL Baumard Distribution (an entity related to defendant SCEA Domaine Des Baumard)[4] who removed the action to the Northern District of California, where it remains pending against Vintus and Baumard. *Id.* at ¶ 5.

In March 2014, Vintus served deposition subpoenas, which included document requests, on two Transo employees (Romain Bordes and Symica Fletcher). *Id.* at ¶ 6, Exs. C &D. These two employees were presumably subpoenaed because their names appeared on a handful of

---

[2] In the interest of minimizing paper which is publicly available through access to the Northern District of California's website, movants have included the filings which they believe are material to the issue at hand. If the Court would like copies of any documents not provided, movants will promptly provide them to the Court.

[3] A "freight forwarder acts as an intermediary between [a] shipper and [an] ocean carrier." *Clevo Co. v. Hecny Transp., Inc.*, 715 F.3d 1189, 1191 (9th Cir. 2013) (citations omitted).

[4] For ease of reference, these entities will be collectively referred to as "Baumard".

3

emails pertaining to the shipment.  Bordes was Transo's Operations Manager, and Fletcher was an Import Operations Agent.  *Id.* at ¶¶ 6-7.  These Transo witnesses both testified at length in their depositions about the shipment at issue and Transo's knowledge of the same.  *Id.* at ¶¶ 8-9.  Documents were not produced by these witnesses because Transo did not have any of the documents since its policy is to retain documents for only one year from the date of the shipment.  *Id.* at ¶ 8, Ex. E, 214:20-215:10, & ¶ 9, Ex. F, 49:20-50:16.  Neither witness specifically recalled the shipment at issue.[5]  *Id.* at Ex. E, 221:1-223:12 & 226:16-227:17, & Ex. F, 59:13-16.  No one currently employed by Transo or Balguerie is believed to know any other specifics about the shipment.  *Id.* at ¶ 8, Ex. E at 227:10-17.  The depositions of these witnesses concluded over two years ago.

After a series of amended complaints, Plaintiff's Third Amended Complaint asserted it was naming another entity "TRANSO, individually and dba TRANSO USA, INC. and dba ALFRED BALGUERIE S.A.-TRANSO" which was a French corporation and allegedly a "part of BALGUERIE and/or BALGUERIE GROUP" as a defendant.  *Id.* at Ex. A, ¶¶ 6-7.  This new defendant was erroneously named, but given Plaintiff's inclusion of the Balguerie name in the laundry list of "d/b/a" names, to avoid any risk of a default being entered against it, Balguerie again moved to dismiss the claims against it.  *Id.* at ¶ 10, Ex. G.  Vintus filed the only substantive opposition[6] to Balguerie's motion.  In its opposition, Vintus expressly asked for jurisdictional discovery over not only Balguerie, but also Transo.  *Id.* at ¶ 11, Ex. H, 5:1-6 & 12: 11-12.  The Northern District of California court denied Vintus' request for jurisdictional discovery over

---

[5] That neither witness recalled the shipment at issue is understandable since their depositions were taken almost two-and-one-half years after the shipment and nothing out of the ordinary was brought to their attention.  *Id.* at ¶ 9, Ex. F, 59:13-22.

[6] Plaintiff and Baumard joined the opposition.

3507994v1 0978379

Balguerie and Transo and granted Balguerie's motion to dismiss with prejudice. *Id.* at ¶ 12, Ex. I.

Shortly after granting the motion to dismiss, the Northern District of California permitted Vintus to file an Amended Cross-Claim for Indemnity (the "Cross-Claim") naming "Transo USA Inc." as a cross-defendant.[7] *Id.* at ¶ 13. Vintus has never sought the issuance of a summons for Transo and has never made any attempt to serve Transo with this pleading. *Id.*[8] No appearance for Transo USA, Inc. appears on the docket of the Northern District of California, and none of the parties have been serving that entity with pleadings or discovery in this case. *Id.* at ¶ 14. Transo is not a party to the action.

**B.     Vintus' Issuance of Subpoenas Seeking Jurisdictional Discovery Which Was Already Denied and Discovery Already Obtained from Transo USA, Inc.**

In violation of the Northern District of California's order denying the jurisdictional discovery Vintus previously sought, Vintus issued three subpoenas, all of which seek to discover jurisdictional discovery over both non-party Transo and the already dismissed Balguerie. Schultz Decl., ¶ 15, Exs. J-L. The subpoenas also seek to discover information that has already been provided by two Transo deponents. The subpoenas were issued to the following: (1) Transo USA, Inc.; (2) Marie Reboul, a Transo employee; and (3) Jean Baillet, a former Transo employee who retired long before the subpoena was served. *Id.* at ¶ 16.

---

[7] It appears that the Northern District of California permitted Vintus to file this cross-claim as a matter of course since the parties who had appeared in the action stipulated to the filing and that the court did not realize that the Amended Cross-Claim actually named entities which were either not technically parties to the action or that the Court had just dismissed on the basis of lack of personal jurisdiction. *Id.* at ¶ 13. Since a cross-claim can only be filed against a party to the action, and since "Transo USA, Inc." was not a defendant to the action, the Cross-Claim is invalid on its face. In other words, Transo USA, Inc., is not a party.

[8] Movants believe that Plaintiff may argue that Transo USA, Inc. was served but is in default because it has not yet appeared. However, this is directly contrary to the parties' statements to the Court "All defendants except Balguerie have filed responses." *See* Dkt. 66 & 77.

3507994v1 0978379

For the Court's ease of reference, movants set forth the topics on which a Rule 30(b)(6) Transo witness will be questioned and the documents the deponent was asked to bring to the deposition relating to personal jurisdiction.[9] Even though Transo is not even a party to this action, the subpoenas broadly seek **"[a]ny and all documents relative to"**: (a) the identity of any respective clients of Transo or Balguerie in California; (b) clients of Transo in California for the last 15 years; (c) business Transo conducted that involves shipping wine or other products to, within or from California for the last 15 years; (d) the clients of Balguerie in California for the last 15 years; and (e) all business Balguerie conducted that involves shipping wine or other products to, within or from California for the last fifteen years. *Id.* at ¶ 15, Exs. J-L. Vintus also seeks *"[a]ll documents"* that "reflect the current business form of Transo" and "relative to the identity of the owner(s) of Transo" for the last six years. *Id.*

With respect to the shipment at issue (which took place almost five years ago), despite the fact that two Transo employees already testified that Transo did not have any documents pertaining to the shipment at issue and no independent recollection of it, Vintus broadly requested testimony and **"[a]ny and all documents relative to"**: (a) the agreement between Transo and Vintus for any and all arrangements to transport the wine from France to California; (b) the identity of the person who loaded the pallets of the wine; (c) the loading of the wine; (d) the sealing of the container; (e) the weighing of the cargo; (f) the counting of the cargo in the container; (f) charges for the transport of the container to the port of departure in France; (g) the

_____

[9] The deposition topics set forth in the Rule 30(b)(6) notice to Transo USA, Inc. contain requests which are virtually identical to the document requests, and several of the Rule 30(b)(6) topics and documents requested are virtually identical to the topics and documents on which Vintus sought jurisdictional discovery before the Northern District of California (which were denied). *Compare* Schultz Decl., ¶ 11, Ex. H at 8:15-23 (Dkt. 59), *with* Attachments 1 and 2 to Exhibits J, K & L.

3507994v1 0978379

identity of the person or persons who delivered the container to Baumard to be loaded with the wine; (h) the identity of the person or persons who transported the container after the container had been loaded with the wine; (i) identity of the company which delivered the container to Baumard; (j) the identity of the company which transported the container from Baumard after it had been loaded; and (k) the entities who received payment for the transport of the wine from France to California. *Id.*

## C.    Extensive Meet and Confer Efforts

In accordance with Local Rule 7(m), on May 14, 2016, as soon as counsel learned that deposition subpoenas and subpoenas *duces tecum* were purportedly served, counsel commenced the meet and confer process. Schultz Decl., ¶ 17. An extensive telephone discussion took place on May 18, 2016. *Id.* at ¶ 18. Detailed correspondence setting forth the reasons why Vintus was not entitled to the discovery it requested was sent to Vintus on May 20, 2016. *Id.* at ¶ 19, Ex. M. During the meet and confer process, movants pointed out, *inter alia*: (a) Vintus had presented no legal authority for obtaining jurisdictional discovery over a non-party; (b) Vintus previously requested the same discovery in the Northern District of California, which the court there declined to order; (c) Vintus was aware that jurisdictional discovery must be ordered by a court or agreed by the parties; (d) if Vintus was taking the position that Transo USA, Inc. was a party to the action that Vintus had not served Transo with the complaint or any other document in violation of FRCP 5; (e) that Transo did not have documents pertaining to the shipment as confirmed by the testimony of Bordes and Fletcher; (f) that Transo had no information pertaining to the shipment other than as set forth in the depositions of Bordes and Fletcher; (g) that Marie Reboul is not involved in the shipments; (h) that service on individual Jean Baillet through a corporate entity named Litigation Management Services was improper service on an individual

3507994v1 0978379

(but in any event that Baillet no longer worked for Transo and had retired); (i) counsel was not available on the scheduled deposition dates as two other pending cases required attendance in San Diego on the scheduled dates; and (j) Vintus failed to comply with the Northern District of California rules with respect to scheduling. *Id.* at ¶¶ 18-20, Ex. M.  Vintus would not agree to withdraw the subpoenas. *Id.* at ¶ 20.[10]  At times, Vintus indicated it would agree to withdraw the subpoenas if counsel would assist in getting a representative of Balguerie (who had been dismissed with prejudice)  to provide a declaration stating certain facts. *Id.* at ¶ 22.  However, no declaration was ever provided. *Id.*  Although movants understand that the parties would like to take the deposition of non-party Balguerie, the parties have never made any attempt to serve deposition notices on Balguerie through the Hague Convention or otherwise. *Id.* at ¶ 23.  This motion followed.

## III.    LAW AND ARGUMENT

### A.    Summary of Basis for Why the Subpoenas Should be Quashed

The subpoenas should be quashed for at least six reasons.  First, the subpoenas seek jurisdictional discovery which has already been denied by the Northern District of California.  Thus, Vintus' subpoenas are nothing more than an end-run around that court's order.  Second, Vintus improperly seeks jurisdictional discovery over non-party Transo without a court order or Transo's agreement.  Third, even if any jurisdictional discovery over non-party Transo was warranted (it is not), it certainly would not be appropriate to obtain 15 years of information on extremely broad topics.  Fourth, the subpoenas seek information and documents which are

---

[10] Vintus' first set of subpoenas were invalid in many respects.  For example, one subpoena did not even identify a date and time, and all of them lacked the signature of Vintus' counsel.  Objections were served. *Id.* at ¶ 21, Ex. N.  Vintus appears to have corrected these errors and re-served at least two subpoenas, for which timely objections will again be served.

3507994v1 0978379

confidential proprietary business records and information, including financial information. Fifth,
the depositions of two Transo employees have already been taken, and they have confirmed that
all of the information that Transo has relating to the shipment at issue, has already been
provided. Any further discovery from Transo would be cumulative, burdensome, oppressive and
a waste of time. Lastly, as to individual Baillet, service of the subpoena is improper since he was
never personally served.

**B.      Baillet Is Not Required to Comply Because He Was Never Served**

To demonstrate the unreasonableness of Vintus with respect to these subpoenas, movants
start with the obvious—Baillet is not required to comply with the subpoena because he was not
personally served. Despite this obvious and basic premise, Vintus refuses to concede that Baillet
does not have to appear for his deposition. Schultz Decl. at ¶ 24. A subpoena <u>must</u> be served on
the "named person" whose testimony is demanded. Rule 45(b)(1). Vintus served its subpoena
for individual Baillet on a corporate entity, Litigation Management Services. Since Vintus will
not concede that service was invalid, Baillet asks that this Court confirm that Baillet does not
need to appear for deposition.

**C.      Legal Standard on Motion to Quash**

Turning to the scope of what has been requested by the subpoenas and the basis upon
which they should be quashed, Rule 45 provides district courts with authority to issue subpoenas
and resolve disputes over them. *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007). Rule 45
requires that a court quash or modify a subpoena which "requires disclosure of privileged or
other protected matters…or subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3). The
Rule also requires that

> [a] party or attorney responsible for issuing and serving a subpoena
> must take reasonable steps to avoid imposing undue burden or
> expense on a person subject to the subpoena. The court for the

3507994v1 0978379

district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Fed.R.Civ.P. 45(d)(1).

Rule 45(d) must be read in conjunction with Rule 26(b). *Heat & Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1023 (Fed. Cir. 1986), *citing Centurion Indus., Inc. v. Warren Steurer and Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981)); *see Watts*, 482 F.3d at 507 (applying Rule 26 to Rule 45 subpoenas). As the Federal Circuit Court in *Heat* noted, Rule 26(b)(1) "is designed to minimize redundancy in discovery and encourage attorneys to be sensitive to the comparative costs of different methods of securing information." *Heat* at 1024 (*quoting* Rule 26(b)(1) advisory committee's note (1983)). Thus, Rule 45 is buttressed by the general provisions of Rule 26, which limits discovery to

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed.R.Civ.P. 26(b)(1).

Rule 26(b)(2)(C) further requires the Court to limit discovery where

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

10

Accordingly, where, as here, a subpoena seeks documents and testimony which are privileged, irrelevant to the claims or defenses of party, not proportional to the needs of the case, redundant, burdensome, oppressive and in violation of another court's order, this Court should issue an order quashing the subpoenas and make whatever other order is are appropriate to protect movants. *Shelton v. United States*, 404 F.2d 1292, 1303 (D.C. Cir. 1968) (Under Rule 45, the court may quash the subpoena when compliance would be unreasonable or oppressive.).

**D.      Vintus Seeks Jurisdictional Discovery in Direct Violation of a Prior Court Order**

A tremendous amount of the discovery sought by Vintus involves jurisdictional discovery, which discovery the Northern District of California already declined to order when Vintus requested it.  Thus, the subpoenas must be quashed as to jurisdictional discovery because that court already decided the issue and declined to order it.  In opposing Balguerie's motion to dismiss on the basis of lack of personal jurisdiction, Vintus asked the court for jurisdictional discovery over Transo: "[t]he depositions of the ***Transo*** representative will be conducted … [by Transo] producing persons most knowledgeable on the subjects noted."  Schultz Decl., ¶ 11, Ex. H at 15:17-19 (emphasis added).  The Northern District of California court declined the relief requested by Vintus.  *Id.* at ¶ 12, Ex. I.  Vintus never moved for reconsideration of that order or pursued any appeal relating to it.  *Id.*  Movants request that this Court quash the subpoenas to the extent that they seek any jurisdictional discovery since another court has already decided that issue.

**E.      No Authority Exists for Granting Jurisdictional Discovery Over a Non-Party**

Though the issue has already been decided by the Northern District of California, there is another basis upon which this Court should grant the subpoenas to the extent that they seek jurisdictional discovery, namely that there is no legal authority supporting jurisdictional discovery over a non-party without a court order or agreement of the non-party.  Movants

11

requested that Vintus provide any authority supporting its position that jurisdictional discovery over a non-party could be obtained through subpoena or without a court order, but Vintus provided none.  Schultz Decl., ¶¶ 18-19, Ex. M.

That no authority exists for obtaining jurisdictional discovery over non-parties through a subpoena makes sense when this Court considers the burdens that parties seeking to prove jurisdiction exists in a specific forum state must prove in the first instance; such discovery is noto obtainable as of right.  The D.C. Circuit recognizes that to obtain jurisdictional discovery, there must be "at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *FC Investment Group LC v. IFX Markets Ltd.*, 529 F.3d 1087, 1093-94 (D.C. Cir. 2008) (*quoting Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998)).  "Mere conjecture or speculation" is not enough to warrant the granting of jurisdictional discovery.  *FC Investment*, 529 F.3d at 1094.  It is not enough to merely establish that "additional discovery sought by [a party] would demonstrate that" it engages in "substantial, continuous, and systematic course of business" in the forum state, as courts have held this is explicitly insufficient under *Daimler* to establish general jurisdiction.  *Freedman v. Suntrust Banks, Inc.*, 139 F.Supp.3d 271 (D.D.C. 2015) (*citing Daimler AG v. Bauman*, 134 S.Ct. 746 (2014)).

Courts within the Ninth Circuit (where the underlying action is pending) require the party making claims against a defendant to establish a "colorable basis" for personal jurisdiction before jurisdictional discovery will be granted.  *See, e.g.*, *Mitan v. Feeney*, 497 F.Supp.2d 1113, 1119 (C.D. Cal. 2007).  A court may deny a request to conduct jurisdictional discovery if, for example, "a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants...." *Pebble Beach Co. v.*

*Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006).  Vintus is well aware that jurisdictional discovery must be ordered by a court before it will be permitted because it cited legal authority for that position to the Northern District of California court.  As Vintus explained, "A district court is vested with broad discretion to permit or deny [jurisdictional] discovery."  Schultz Decl, ¶ 11, Ex. H at 5:28-6:6:1 (*quoting Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)).  Exercising such discretion, Vintus' request for jurisdictional discovery was plainly denied by the court in the underlying action.  *Id.* at ¶ 12, Ex. I.

Movants anticipate that in opposition to this motion, Vintus will argue that since Bordes testified that Transo has wine clients in California, jurisdictional discovery permitting Vintus to establish that general jurisdiction over Transo exists should be permitted.  Yet, the Supreme Court requires far more.  To establish general jurisdiction "affiliations [must be] so continuous and systematic as to render [the defendant] essentially ***at home in the forum State… i.e., comparable to a domestic enterprise in that State.***"  *Daimler*, 134 S.Ct. at 758 (citation and quotation marks omitted) (emphasis added).  The "paradigm" basis for showing this is that the corporation's "domicile, place of incorporation, and principal place of business" are within the state.  *Goodyear*, 131 S.Ct. at 2853-54.  "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).  Under this "exacting standard," it is undeniable that the mere fact that a company has clients in California does not equate to a "colorable basis" for establishing jurisdiction in California because it is not at home in California.  *Daimler*, 134 S.Ct. at 762 and n. 20 ("[a] corporation that operates in many places can scarcely be deemed at home in all of them").

13

Vintus' unprecedented use of a subpoena to obtain jurisdictional discovery over non-party Transo and in violation of the Northern District of California's order should be deemed improper, and the subpoenas quashed.[11]

## F.    The Subpoenas Are an Undue Burden of Additional Expense

Rule 45(d)(3)(A)(iv) requires the court to quash a subpoena when it subjects a person to undue burden. The Rule 45 "undue burden" standard requires courts to be generally sensitive to the costs imposed on third parties. *See, e.g.*, *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir.1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in Rule 45 inquiry); *see also* Rule 45(d)(2)(B) (any court order to compel compliance with document subpoena "shall protect any person who is not a party or an officer of a party from significant expense" of compliance).[12] If, in responding to a subpoena, a party is faced with significant costs, "the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'" *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).

---

[11] The subpoenas also request that the deponents provide documents for a completely separate corporate entity, Balguerie who has already been dismissed from the underlying actions twice, the second time with prejudice. Schultz Decl., ¶ 12, Ex. I. Such a request violates Rule 45(a)(1)(iii).

[12] Vintus' counsel claims that since movants' counsel is affiliated with a large law firm, the depositions should go forward as planned even though San Francisco counsel is unavailable. First, counsel from the San Francisco Office, Pamela Schultz, already defended the depositions of Transo's two previous deponents. Schultz Decl., ¶¶ 8-9. Expecting Transo to pay for another attorney to prepare for these depositions is simply unreasonable. Moreover, if Transo is ever made a party to the underlying action, then it will be represented by counsel from the San Francisco office. Simply stated, San Francisco counsel needs to participate in any depositions that go forward.

3507994v1 0978379

Movants will be forced to incur significant expenses if required to comply with the subpoenas such as paying for its counsel to travel to Washington, D.C., preparation of witnesses for the deposition, and searches and production of 15 years of corporate records.[13]  These expenses are particularly burdensome considering that two Transo employees have already been deposed and the depositions seek testimony and documents which were already obtained in the prior depositions.[14]  Schultz Decl., ¶¶ 6-9, Exs. C-F.  Both representatives testified that they did not remember the shipment at issue and that in accordance with Transo's normal document retention policies most documents were recycled.  Thus, Transo's knowledge about the shipment in question and all documents within its possession, custody or control pertaining to the shipment in question has already been provided.  Although counsel raised these facts numerous times to Vintus' counsel during the meet and confer process, Vintus refuses to withdraw the subpoenas. *Id.* at ¶¶ 19 & 25.  Moreover, counsel also advised that deponent Reboul does not have a day to day role in shipments such as the one at issue, and therefore, her testimony on these subjects would be a waste of time. *Id.* at ¶ 26.

Vintus' request to take three more depositions of Transo-related individuals and Transo itself should be denied, and subpoenas quashed.  Questions about the shipments at issue have been asked and answered.  Vintus' repeated attempts to depose representatives of a corporate entity are unnecessary and oppressive, and should not be tolerated. *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001) (subpoena issued to non-party

---

[13] Though Transo's practice is to retain documents for only one year, it is possible that some corporate documents may have been retained.  In any event, Transo will need to search its records to confirm the existence or non-existence of the requested documents.

[14] Movants submit that most, if not all, of the deposition testimony of Bordes relates to Transo's knowledge of the shipment at issue, and that movants could likely designate Bordes as the Rule 30(b)(6) on the topics relating to the shipment at issue.

3507994v1 0978379

corporation was invalid because the corporation's representatives had previously been deposed). This Court has the power to preclude these depositions on many of the bases set forth in Rule 26(b)(2)(C) since the depositions are unreasonably cumulative and duplicative, Vintus had ample opportunity to obtain the information at the depositions of the first two Transo employees and the burden of the proposed discovery outweighs its benefits since Transo's representatives have already provided all of the information and documents Transo has pertaining to the shipment at issue.[15]

Even if the depositions were to go forward, they cannot go forward on the dates for which they are currently scheduled. Movants' counsel has raised this many times, but Vintus refuses to reschedule the depositions. Schultz Decl., ¶¶ 19 & 27, Ex. M. Notably, the local rules of the Northern District of California required Vintus to meet and confer about the scheduling of depositions of nonparties. Local Rule 30-1 of United States District Court for the District of Northern California, Rule 30-1. This was never done, and counsel has already scheduled conferences and depositions in San Diego. Schultz Decl., ¶ 27.

G.      **The Subpoenas Seek Confidential and Proprietary Business Records of Transo**

Courts also must quash any subpoena that "requires disclosure of privileged or other protected matter." Rule 45(c)(3)(A)(iii). Courts are also empowered to quash or modify a subpoena if it "requires disclosure of a trade secret or other confidential research, development, or commercial information," unless *substantial need* is shown. Rule 45(d)(3)(B). Courts have refused to allow discovery from nonparties where the requested information would unduly infringe on the expectations of confidentiality of unrelated clients of the third party. *See*

---

[15] At bottom, if a further deposition on any topic is permitted, Vintus should be required to pay expenses and attorney fees of the deponent in connection with the deposition.

*Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (upholding

order quashing subpoena requesting nonparty tax returns because returns were confidential);

*Packer v. Hansen*, No. Civ. A. 98-380, 1999 WL 1038343, at \*5 (E.D. Pa. Nov. 12, 1999)

(quashing subpoena issued to third-party tax preparer because broader restrictions are justified on

discovery sought from nonparty about another nonparty). The party issuing the subpoena must

demonstrate that its need for the documents outweighs the interests of the subpoenaed party and

the confidentiality of the documents. *See Micro Motion, Inc. v. Kane Steel Co. Inc.*, 894 F.2d

1318, 1323 (Fed. Cir. 1990) (discovery is not permitted where harm to target of discovery

outweighs need for the information); *Bio-Vita, Ltd. v. Biopure Corp.*, 138 F.R.D. 13, 17 (D.

Mass. 1991) (a party's need for discovery must outweigh a nonparty's interest in nondisclosure);

*Pioneer Hi-Bred Int'l Inc. v. Holden's Found. Seeds, Inc.*, 105 F.R.D. 76, 83 (N.D. Ind. 1985)

(same); *Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2001 WL

1002480, at \*7 n. 5 (discovery of sensitive business records of nonparties denied).

Accordingly, Vintus must demonstrate that it has a substantial need for the documents,

and that this need outweighs not only Transo's interest in keeping the documents and

information confidential, but also the interests of any other entities whose information might be

disclosed. Moreover, the requested documents would contain sensitive financial, tax,

commercial and other information unrelated to this action, some of which is information that

would also result in disclosure of entities which have nothing to do with this case (such as

Transo's clients). In addition, because of client confidentiality concerns, discovery of specific

facts relating to Transo commercial transactions with other clients is not within the proper scope

17

of discovery.[16] Furthermore, Transo's clients have not been given notice of Vintus' request and have not been given the opportunity to intervene to protect their confidential business and financial records.

Vintus cannot demonstrate that it has *any* need for the requested documents, especially a "substantial need." But even if it could, the subpoenas seek the confidential information and documents only for the purposes of jurisdictional discovery in violation of a court order. No legitimate purpose for discovery of confidential and proprietary documents exists, and therefore, the subpoenas should be quashed to the extent they request this information.

**H.      The Subpoenas Request Irrelevant Information**

Although irrelevance is not among the enumerated reasons for quashing a subpoena under Rule 45(c)(3), federal courts have incorporated relevance as a factor to consider. *Heat*, 785 F.2d at 1023. A party is entitled, as a matter of right, only to discovery of the matters relevant to the issues framed by the pleadings—the "claims or defenses"—and under Rule 26(c)(2)(iii) any discovery not related to the claims or defenses must be ordered by the court. On a motion to obtain discovery of matters otherwise inadmissible at trial, the burden is on the party seeking discovery to show good cause for the discovery, and to demonstrate "a plausible chain of inferences showing how discovery of the item sought would lead to other admissible evidence." *Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 651 (N.D. Ill. 1994). More fundamentally, a party's curiosity, wishes, desires, or conjecture do not give rise to a right or basis for discovery. "(T)he standard of relevancy is not so liberal as to allow a party to... explore matter which does not presently appear germane on the theory that it might conceivably become

---

[16] Disclosure of some of this information to Vintus may also give Vintus a commercial advantage.

3507994v1 0978379

so." *Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997); *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989). Denial of discovery "is proper as to dismissed claims or to proposed amended claims which were denied." *Sterrett v. Cowan*, 85 F. Supp. 3d 916, 938 (E.D. MI 2015).

The subpoenas which relate to jurisdictional discovery broadly request any and all documents relating to, *inter alia*, the corporate and business relationship of Transo and Balguerie, clients of Transo and Balguerie, business that Transo and Balguerie have conducted that involves shipping wine or other products. These broad brush requests ask for fifteen years of confidential, proprietary, and commercially sensitive information that has nothing to do with the shipment at issue. Even if these documents could be located, they would likely total thousands of pages. Given the irrelevancy of these documents to the subject matter of this case, there is no basis to permit this discovery.

## I.       The Subpoenas Constitute Harassment of Transo and Its Employees

A subpoena may be quashed where it is abusive, or its purpose or intent is to harass or serve an improper discovery tactic. *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003). A subpoena is abusive when it is too broad and "[n]o attempt... to try to tailor the information request to the immediate needs of the case" is made. *Id.* The Vintus subpoenas request an impossibly broad and intrusive demand into all corporate, business or client records of non-party Transo for a period of 15 years! The subpoenas were also not prepared keeping in mind that two Transo employees already provided all of the information that Transo has pertaining to the shipment at issue. Vintus had ample opportunity to depose two Transo employees. The subpoenas serve no other purpose except to further harass Transo and its employees. Moreover, Vintus will only withdraw the depositions if movants assist in obtaining a declaration from an entity which has already been dismissed with prejudice (Balguerie). Yet

3507994v1 0978379

Vintus never tried to obtain the deposition of Balguerie to ascertain these facts.  Vintus had

procedural avenues available to it to obtain the facts it wanted from Balguerie representatives,

but it failed to pursue those avenues.  Movants should not be asked to conduct Vintus' discovery

for it.  The depositions should be quashed as abusive.

**J.      A Protective Order Should Be Entered Precluding Further Depositions of Transo**

Movants also respectfully request that in addition to quashing the subpoenas, that this

Court enter a protective order pursuant to Rule 26(c) because good cause exists to protect Transo

and individuals with whom it is affiliated from annoyance, embarrassment, or undue burden and

expense.  A protective order is also appropriate to protect or keep private confidential or

otherwise protected information.  *See Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 588

(C.D. Cal. 2007).  Transo representatives have been deposed in this litigation on two occasions.

These representatives testified truthfully as to their and Transo's knowledge about the shipment

in question.  Efforts to pursue three more Transo witnesses to provide the same testimony will

result in considerable expense to movants who will have to pay an attorney to represent them at

the deposition and turn their professional duties to preparing for a deposition.  With respect to

the jurisdictional discovery, Vintus should be precluded from propounding any more discovery

relating to this issue since the Northern District of California court already denied the relief

sought.

**K.      Sanctions Should Be Awarded for Having to Oppose These Frivolous Subpoenas**

Movants submit that Vintus' unreasonable actions, including the violation of the

Northern District of California's prior order and its attempt to utilize Transo as a means to

extract information from Balguerie warrant significant sanctions.  Vintus and its counsel were

under a duty to take reasonable steps to avoid imposing an undue burden on a person subject to

the subpoena.  Rule 45(d)(1).  Rule 45(d)(1) expressly permits the imposition of sanctions for a

party's breach of this duty, including attorney's fees incurred in connection with the improper

discovery request. *Id.*; *Mattel*, 353 F.3d at 814 ("federal district court's justified finding that the

subpoena was overly burdensome and served for an improper purpose, including the exertion of

pressure on witnesses, the court did not abuse its discretion in awarding fees and expenses").

Rule 37 (a)(5)(A) also notes that if a protective order is granted, the court can "require the party

or deponent whose conduct necessitated the motion… to pay the movant's reasonable expenses

incurred in making the motion, including attorney's fees."

    Vintus intentionally violated the protections and guidelines set out in Rule 45, as well as

the previous order from the Northern District of California, and should be sanctioned

accordingly.  Moreover, Vintus has already been afforded opportunity to depose two Transo

representatives on the issues related to the case.  Vintus has no good faith basis for pursuing yet

another deposition, and certainly has no basis to obtain confidential business records of non-

party Transo.  Movants respectfully request reasonable attorney's fees pursuant to Rule 45(d)(1)

and Rule 37 (a)(5)(A) and for the time and expenses required to bring this motion and its meet

and confer efforts relating to the same.  Schultz Decl., ¶¶ 28-29.

## IV.    CONCLUSION

    The subpoenas should be quashed because they ask for jurisdictional discovery in direct

violation of an order from the court in the underlying action.  The subpoenas also seek

jurisdictional discovery over a non-party.  There is no legal authority permitting Vintus to this

information spanning 15 years of Transo's business, which also constitutes protected confidential

and proprietary commercial information.   The subpoenas are also nothing but harassment of

non-party Transo who already produced two witnesses to testify on the knowledge of the

company pertaining to the shipment at issue.  Any further discovery from Transo would be

cumulative, burdensome, oppressive and a waste of time.  Movants respectfully request that this

3507994v1 0978379

Court quash the subpoenas and enter an appropriate protective order protecting Transo and individuals who are or were affiliated with it from efforts to seek further discovery.   Further, movants never should have had to file this motion and therefore, movants request that sanctions be awarded for having to file this motion and any reply thereto.

3507994v1 0978379

DATED:    June 7, 2016

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: _____
Christopher M. Dougherty
D.C. Bar No. 978176
333 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 333-3434
Email: cdougherty@hinshawlaw.com

*Attorneys for Transo USA, Inc., Marie Reboul
and Jean Baillet*

Forrest Booth
*Readmission Pending*
One California Street, 18th Floor
San Francisco, CA 94111
Telephone:  (415) 362-6000
Email:  fbooth@hinshawlaw.com

Pamela L. Schultz
*Pro Hac Vice Application to be Submitted*
One California Street, 18th Floor
San Francisco, CA 94111
Telephone:  (415) 362-6000
Email:  pschultz@hinshawlaw.com

23